## Commonwealth *v.* Lehigh Coal & Navigation Co., Appellant.

[Marked to be reported.]

*Taxation—Corporation—Capital stock.*

Shares of stock on which a state tax has been paid by the corporation issuing them are not liable to be again taxed in the hands of the holder.

It makes no difference who is the shareholder. He may be a natural person holding in his own right, or as a trustee for others. The shares may be held by a firm, a limited partnership, or a corporation. In each case, however, the person, firm or corporation that holds shares of stock on which the capital stock tax has been paid is within the spirit and the letter of the protection given to individual holders by the acts of 1868 and 1889, and the shares held by them are not taxable in their hands.

*Double taxation—Legislative power—Presumption—Acts of* 1868, 1891.

While the legislature has the power to impose double taxation, the presumption is against the existence of an intention to exercise such power, and this presumption will prevail until it is overcome by express words showing the contrary. Even when such intention is made to appear, the double taxation provided must be such as will meet the uniformity test provided by the constitution, or the courts will still refuse to enforce it.

It is double taxation to assess the capital stock of a corporation against the corporation and then assess the shares in the hands of the several holders.

The proviso in the act of Jan. 3, 1868, P. L. 1318, which forbids any construction of the act itself that shall extend the relief given to shareholders, to the corporation as such, does not disclose a legislative intent to impose double taxation upon the shares of stock of the corporation.

Nor does the act of June 8, 1891, P. L. 238, § 21, which provides that the corporation " shall be subject to and pay into the treasury of the commonwealth annually a tax at the rate of five mills upon each dollar of the actual value of its whole capital stock of all kinds, including common, special and preferred," disclose any purpose to impose double taxation. The word " whole " was used by the legislature for the purpose of excluding all doubt about the taxability of the various classes into which the stock might be divided, and with no reference to the character of the investments in which the capital might be employed.

*Manner of ascertaining tax on capital stock.*

The tax on the capital stock of a corporation is ascertained by deducting from the total appraised value of the capital stock, so much of this sum as is represented by investments in United States bonds, or in patent rights under the United States, and in the stock of manufacturing corporations, and in shares of stock in corporations that have been assessed with and paid the tax on capital stock.

Argued May 29, 1894. Appeal, No. 18, May T., 1894, by defendant, from judgment of C. P. Dauphin Co., Sept. T., 1891, No. 444, for plaintiff, on trial by court without jury. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Appeal from tax settlement.

The court, in an opinion by SIMONTON, P. J., printed in 151 Pa. 282, note, found that defendant company was not exempt from taxation on the portion of its capital stock invested in the shares of other corporations of the commonwealth which had paid a tax on their capital stock for the same tax year. Exceptions were overruled in an elaborate opinion to the same effect.

*Error assigned* was inter alia to the entry of judgment.

*M. E. Olmsted,* for appellant.—The commonwealth is not entitled to recover from defendant any tax on its capital stock, which represents its holdings in the stock of other corporations the tax upon which has already been paid into the state treasury : Com. v. Fall Brook Coal Co., 156 Pa. 488.

It is freely conceded that prior to 1868 the legislature did impose this species of double taxation ; that is to say, it did tax the capital stock against the corporation, and it did also tax the shares of that capital stock in the hands of the holders.  But in 1868 the legislature expressly repealed one of these taxes, and it has never been reimposed.  The following cases arose prior to the act of 1868 : Whitesell v. Northampton Co., 49 Pa. 526 ; Carbon Iron Co. v. Carbon Co., 39 Pa. 251 ; Phila. Saving Fund Society v. Yard, 9 Pa. 359 ; Lackawanna Iron & Coal Co. v. Luzerne Co., 42 Pa. 424 ; McKeen v. Northampton Co., 49 Pa. 519.

Undoubtedly there is a distinction which, for certain legal purposes, may be drawn between the capital stock of a corporation and the shares into which it is divided.  But substantially there is no distinction.  Whatever touches the value of one touches the value of the other.  To tax both is to impose double taxation : Catawissa R. R. Co.'s Ap., 78 Pa. 59.

Granted that to tax the capital stock of a corporation and to tax also the real estate in which that capital stock is invested, would be double taxation.  Prior to 1866 there was such double taxation clearly and distinctly imposed, not contested nor disputed by anybody.  But by act of Feb. 23, 1866, P. L. 82, the tax on real estate was abolished, and since that date there has been no double taxation of that character, and consequently no question of that kind arises in this case.  The revenue acts of June 1, 1889, P. L. 420, and June 8, 1891, P. L. 239, provide in their first sections that shares of stock of corporations which pay taxes into the state treasury shall not be taxed in the hands of the holders.

The tax in this case is levied upon the capital stock of defendant company upon a valuation thereof.  A tax so imposed is a tax upon the property of the company : Com. v. Standard Oil Co., 101 Pa. 119.  It is a tax upon U. S. bonds owned by

the company : Com. v. Penna. Coal Co., 5 Pa. C. C. R. 90.   It is a tax upon bonds, mortgages and shares of stock owned by the company : Fox's Ap., 112 Pa. 337; Fidelity Co. v. Lough- lin, 139 Pa. 612.   And therefore a tax upon the whole capital stock of defendant company is a tax upon the shares which it owns in the capital stock of other corporations which have al- ready been taxed.

Every act of assembly has in terms taxed the whole capital stock of corporations, and yet the tax has always been appor- tioned so as to apply only to such parts as were properly tax- able : Com. v. Standard Oil Co., 101 Pa. 119.

Reference is challenged to a single case since 1868, in which the commonwealth has recovered tax upon the capital stock of a corporation and also upon the shares, or any portion of the shares, into which that capital stock was divided.   It has been attempted a number of times, but always unsuccessfully : Penna. Co. for Ins., etc., v. Com., 22 W. N. 340 ; s. c., 2 Mona. 694 ; Com. v. Penna. Co., 145 Pa. 266.

*W. U. Hensel*, attorney general, *James A. Stranahan*, deputy attorney general, with him, for appellee.—The legislature has the right to impose double taxation : Act of April 29, 1844, P. L. 497 ; Iron Co. v. Carbon Co., 39 Pa. 251; Iron Co. v. Lu- zerne Co., 42 Pa. 424.

The act of Jan. 3, 1868, P. L. 1318, did not expressly nor by implication relieve corporations holding shares of stock from tax thereon.   On the other hand, it explicitly continued this tax by its proviso, " that this act shall not be construed to re- lieve said corporation from any tax now imposed by law on the real estate belonging to said corporations from the state, county or local tax to which they are now or may hereafter be subject."

Neither in the case of the Commonwealth v. Fall Brook Coal Co., 156 Pa. 488, nor in the elaborate argument in the present case, has it been pointed out that the proviso in the act of Jan. 3, 1868, has ever been repealed expressly or by necessary implication.

We submit that Penna. Co. for Ins. etc. v. Com , 22 W. N. 340, is not authority in point.   It may be granted that since the act of 1868 shares in the hands of (individual) shareholders are not taxable ; and that double taxation is not to be presumed.

That case decides nothing more. The same is true as to Fidelity Company v. Loughlin, 139 Pa. 612. The conditions here are shares in the hands of corporate holders, who were made liable by the act of 1844, and whose liability was expressly continued by the unrepealed provision of the act of 1868.

If the language of an act of assembly is such as to leave its meaning in doubt the court would be inclined to give it such .construction as would best accord with the general system of finances : Com. v. Bacon, 8 S. & R. 136.

A reversal of contemporaneous construction would exempt a great proportion of the capital stock of railroads and traction companies.

M. E. Olmsted, for appellant, in reply.— The intention of the act of 1891 was to put the whole stock upon the same taxable basis, doing away with the dividend basis and requiring an appraisement of the whole stock. It has frequently been claimed by the commonwealth that because the law makes no proviso for the apportionment of capital stock, therefore the whole stock is taxable. But, whenever occasion required, this court has held otherwise. This question is fully discussed in Com. v. Standard Oil Co., 101 Pa. 119. (See cases there cited, pp. 131, 132, 146 and 147.) In Com. v. Dredging Co., 122 Pa. 386, a similar conclusion was reached. In Com. v. Penna. Coal Co., 5 Pa. C. C. R. 90 (not found in the state reports) this court held that capital stock invested in and representing United States bonds was not taxable. It has always been conceded that the capital stock of a corporation invested in Pennsylvania state bonds is not taxable, the legislature having expressed its intention that the bonds should not be taxed. The law has never made any provision for taxation for less than a whole year, but fractions of time have always been recognized in assessing the tax on capital stock. In Com. v. Phila. & Reading R. R., 150 Pa. 312, the tax on loans was apportioned to a part of the tax year. The legislature having declared against this double taxation it cannot be enforced. The decision in the Fall Brook case is conclusive.

The decisions of this court in the Westinghouse cases have no bearing whatever upon the point at issue. There was no question of double taxation decided or even discussed in either

of those cases. Each of the defendants in the Westinghouse cases did own shares of stock in other corporations, but no evidence was offered in the court below to show that any tax upon or in respect of said shares had been ·paid, either by the corporation which issued them or the one which owned them, and as matter of fact no tax had been paid by or charged against either corporation.

OPINION BY MR. JUSTICE WILLIAMS, July 11, 1894 :

This case raises but one question. It is whether shares of stock on which a state tax has been paid by the corporation issuing them are liable to be again taxed in the hands of the holder. This question was decided in Commonwealth v. Fall Brook Coal Company, 156 Pa. 488, which was before this court just one year ago.

It is fair to the learned judge of the court below, however, to say that the judgment now appealed from was entered before the decision in that case was announced. But the question now before us is no longer an open one. It was discussed at some length in Commonwealth v. Fall Brook Coal Company, supra, and the opinion filed in that case is referred to as expressing the views of the court upon the general subject.

We shall add to what was then said but two observations, and we shall do this as briefly as possible. The first of these is that the question presented in this case was anticipated and answered by the act of 1868 in the most explicit manner. That act declares that the shares of stock held by any stockholder in any corporation that, in its corporate capacity, pays the tax on capital stock imposed by the state, shall not be liable to taxation in the hands of such stockholder for either state or local purposes. It is not easy to see how any possible doubt could exist as to the meaning of this clear and positive provision. But the lawmakers evidently did not mean to be misunderstood or misinterpreted, for in the very next sentence they proceeded to repeal unconditionally so much of the act of 1844 as imposed taxation upon a stockholder as such, and provided the machinery for its assessment and collection. Here we have (*a*) the legislative judgment that capital stock and the shares or parts into which it is divided are practically identical ; (*b*) a recognition of the fact that the tax paid by the cor-

poration on the whole capital stock is paid on behalf of each and every holder of its several parts or shares; (*c*) a positive declaration that when the tax is paid by the corporation it shall not be again levied on the shareholders; and (*d*) a repeal of the act under which alone such assessment against the shareholder could be made.

But the act of 1889 under which this assessment is made is no less explicit upon the same subject. It enumerates the subjects of taxation in the first section. Among other kinds of property declared to be taxable are shares of stock in corporations. But there is an express exception made in favor of two classes of corporations. One of these is that known as manufacturing corporations. The other is made up of those that are assessed with a capital stock tax by the auditor general which is paid to the state treasurer by the corporation. Shares of stock in any corporation belonging to either of these classes are not to be charged with taxes in the hands of the holders, because, as to the first class, the stock is not taxable for any purpose, and, as to the second class, the tax is paid by the corporation as such in bulk.

Under the law as declared by these statutes there can be no room for serious contention over the position of capital stock and shares of stock. Capital invested in corporate stocks, like capital invested in bonds, mortgages, municipal loans and the like, should pay taxes once. Whether these are paid by the holders of the stock for their respective interest, or by the corporation itself as the agent and representative of all its shareholders, is of no possible consequence to the owners of the property. It is more convenient for the state to keep its accounts with the corporations, and to collect its taxes on corporate property from the officers of the corporation and in a lump, than to collect it in small sums from many shareholders. The state adjusts her machinery of taxation to this method of dealing with her corporations, and relieves the separate holders of stock from liability for this reason. She says in substance to the shareholders: " You are many, but the artificial person you have created to represent you is one. We will deal with the common fund in the name of its legal holder, the corporation, and we will not deal with you as separate holders of distinct parts of it."

Now it makes no difference who is the shareholder. He may be a natural person holding in his own right, or as a trustee for others. The shares may be held by a firm, a limited partnership, or a corporation. In each case, however, the person, firm or corporation that holds shares of stock on which the capital stock tax has been paid is within the spirit and the letter of the protection given to individual holders by the acts of 1868 and 1889, and the shares held by them are not taxable in their hands. There is no escape therefore from the conclusion that the judgment rendered in this case is in the very teeth of our tax laws, and we can say no less of it than was said of the judgment of the court below in Commonwealth v. Fall Brook Coal Company: "The judgment in this case cannot be sustained upon any decision of this court, upon the provisions of the statute under which the tax is assessed, nor upon principle, and it is now reversed."

But we are reminded by the learned attorney general that even if the fact be that the taxation insisted on in this case would be double taxation yet the legislature has power to impose it. This as a general proposition we do not question; on the other hand it has been asserted by this court on many occasions. What we do say however is that the law will not presume an intention to exercise this power, but such intention must appear affirmatively. Fidelity Company v. Loughlin, 139 Pa. 612. The presumption is against the existence of an intention to impose double taxation or any other unjust burden, and that presumption will prevail until it is overcome by express words showing the contrary: Commonwealth v. Fall Brook Company, supra. When such intention is made to appear, the double taxation provided must be such as will meet the uniformity test provided by the constitution, or the courts will still refuse to enforce it. But in this case we have the legal presumption which standing by itself would be enough; and then we have express words, not rebutting the presumption, but affirming it, and putting it into the form of a legislative declaration of intention not to exercise its power of double taxation, but to select one of the two sources from which the tax might be drawn, and distinctly relieve the other.

The suggestion is also made in this case that it is not double taxation to assess the capital stock tax against the corporation

and then assess the shares of the several holders of the same stock against them separately. This question has several times been fully considered by this court, and very recently in the Fall Brook Coal Company case. In that case we said that a corporation came into the world, like a natural person, naked. The persons who join to create it, and whom it is to represent in the business proposed, put into its treasury the several sums they had agreed with each other to contribute to its capital stock, and take a certificate of that fact therefor. These certificates afford evidence for the persons to whom they are issued that they have severally subscribed and paid for certain shares in the venture or business to be undertaken by the corporation. The effect of this is that the money subscribed by those who organized the corporation is brought together in the treasury ready for use, while the subscribers have their certificates to show what each one has paid, and what his relative interest is in the venture and its profits. The money in the treasury is the common stock or capital to be employed. The certificates in the hands of those who paid the money are evidence of the amount of their shares of the stock. The corporation then puts the money into coal lands, cars, canal boats, mining machinery, wages of employees, and other necessary expenses. The property of the corporation consists of many items, and is often widely scattered. How shall this property be valued for the purposes of taxation? The law provides that instead of making use of an extended inventory of assets and estimating the value of each article thereon separately, the property shall be deemed worth for purposes of taxation just what it is apparently worth for business purposes, and so adjusts its value by a statement which the corporation is required to submit annually for this purpose. Upon this statement the auditor general fixes the actual cash value of the stock of the corporation at just what the items in the statement show its property to be worth. The capital stock tax is then assessed upon the valuation so made and the corporation as such is required to pay it to the state treasurer. These certificates of stock held by the respective stockholders represent the several interests of each holder. The capital stock comprehends the interest of all the stockholders. When the corporation as the legal owner of the property held in its name, and as the representative and

trustee of the equitable owners, pays the tax on all the stock in a single lump, this total is the exact equivalent of the aggregate of the several sums due upon the separate shares into which the stock is divided. Such payment discharges the claim of the state upon each and all of the shares into which the capital stock may have been divided, for the very obvious reason that the whole includes the parts of which it is composed.

But it seems to be thought that we have overlooked a proviso to be found in the act of 1868 that is entitled to weight in the determination of this case. Immediately following the provision in that act which has been already commented upon, and which declares that shares of stock shall not be taxed in the hands of the separate holders where the corporation has paid the tax on capital stock, is a proviso which forbids any construction of the act itself that shall extend the relief given to shareholders, to the corporation as such. This proviso imposes no burden on the corporation, lays down no rule for fixing the value of its capital stock, but leaves the subject of taxation just where it was before the act of 1868 was passed. The body of the section in which the proviso occurs declares in effect that the stock shall be taxed but once ; and when the tax has been charged against the corporation upon the aggregate of all its shares it shall not be again charged against the parts into which it is divided in the hands of their respective owners. The proviso then adds in substance by way of explanation that the section must not be extended by judicial construction beyond the plain meaning of its words. The state might properly assess the stock to the corporation in bulk or to the holders in detail, but the section and the proviso together deal with it in the hands of the corporation and not in the hands of the shareholders. We see nothing in this that sheds the faintest glimmer of light on the point in controversy.

Equally unsatisfactory is the citation made by the learned judge of the court below from the act of 1891, section 21, P. L. 238, passed two years after this tax was assessed, and the argument built upon it. We quote from the opinion as we find it in the paper-books, the following passage: "And as if in view of this recent claim (the claim that shares of stock in a corporation that has paid its capital stock tax shall not be again taxed in the hands of the separate holders) and to effect-

ually exclude it, the act of June 8, 1891, section 21, enacts that every corporation liable to the tax on capital stock shall be subject to and pay into the treasury of the commonwealth annually a tax at the rate of five mills upon each dollar of the actual value of the whole capital stock of all kinds, and this is repeated in the act of June 8, 1893."

The learned judge emphasizes the words "the whole capital stock," and argues that the meaning of the lawmakers was that no deductions should be made from the whole amount of the appraised value because of the character of the property in which any part of such capital was invested or for any other reason. But the learned judge must have quoted from memory and could not have had the act of 1891 before him. The passage which he quotes stands in the statute thus : "Shall be subject to and pay into the treasury of the commonwealth annually a tax at the rate of five mills upon each dollar of the actual value of its whole capital stock of all kinds, including common, special and preferred, as ascertained in the manner prescribed in said 20th section."

The word "whole" was used by the legislature for the purpose of excluding all doubt about the taxability of the various series or classes into which the stock might be divided and with no reference to the character of the investments in which the capital might be employed. No other reply to the argument built on the fragment of a sentence taken from the act of 1891 need be made, or will be made, than simply to place the entire sentence together, and leave it as the legislature left it, to tell its own meaning. The legislature has never attempted to tax all the property in which the stock of a corporation or the capital of a private person was invested. It is well settled by the decisions of the Supreme Court of the United States as well as of this court that when the total appraised value of the property of a corporation and the consequent value of its capital stock has been made, so much of this sum as represents investments in United States bonds or in patent rights must be deducted before the taxes are assessed. In addition to these deductions so much of the capital stock as may be invested in manufacturing corporations should be deducted, for the shares in such corporations are not subject to state tax ; and finally, so much as may be invested in shares

of stock in corporations that have been assessed with and paid, the tax on capital stock should be taken out, and the sum so arrived at will represent the total value of the whole capital stock for the purposes of state taxation.

As the taxes due from the defendant under our construction of its liability have been paid, and the item still unpaid is one for which the defendant is not liable, we can dispose finally of this case at this time. The judgment in favor of the commonwealth is reversed, and judgment is now entered in favor of the defendant with costs of suit. .